Terry JORDAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A02–9706–CR–332.

Court of Appeals of Indiana.

March 2, 1998.

Bruce N. Elliott, Marion, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Carol A. Nemeth, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Terry Jordan appeals his conviction by jury of dealing in cocaine, as a class B felo-

ny.[1]  We affirm.

## ISSUES

I. Whether sufficient evidence exists to rebut Jordan's entrapment defense.

II. Whether the jury rendered fatally inconsistent verdicts requiring reversal of Jordan's conviction of dealing in cocaine.

## STATEMENT OF FACTS

In October of 1996, the Grant County Joint Effort Against Narcotics ("J.E.A.N.") Team, a local drug task force, targeted Kenny Brady in a drug investigation. The J.E.A.N. Team employed a confidential informant to arrange a controlled buy with Brady.

On October 5, 1996, the informant was unable to contact Brady by telephone to arrange a controlled buy. Bobby Weaver, the boyfriend of Brady's sister, subsequently called the informant. Based on Weaver's statements during this telephone conversation, the J.E.A.N. Team made plans to make a controlled buy from an individual named T.J., who was later identified as Terry Jordan. Jordan returned a telephone call to the informant's residence and spoke to Angela Blackburn, the informant's girlfriend. Jordan agreed to meet the informant at a Quickie Mart in Marion and to "go three for fifty," (R. 158), meaning he would sell three rocks of cocaine for fifty dollars. Jordan testified that during a conversation with Blackburn, she told him that he could take "a pinch off the rock [cocaine]" that he was able to deliver. (R. 332).

The J.E.A.N. Team outfitted the informant with a recording device and gave him $50 of photocopied "buy money." (R. 164). The confidential informant drove to the Quickie Mart parking lot where he met Jordan at 1:20 a.m. on October 6. Jordan handed the informant rock cocaine in exchange for $50. The two men then discussed a second drug transaction.

Shortly thereafter, the informant contacted Jordan by telephone to arrange a second controlled buy of a "fifty." (R. 258). Jordan agreed to make a second drug transaction and stated that he needed twenty to twenty-five minutes. (R. 258). Jordan called the informant back and told the informant to meet him back at the Quickie Mart. Both of these telephone conversations were recorded by police. At 2:43 a.m., the informant made a second controlled buy two blocks south of the Quickie Mart in the 3600 block of South Felton Street. The police stopped Jordan as he attempted to leave the scene in his vehicle. As Jordan exited the vehicle, a small piece of rock cocaine fell between his feet. Another piece of rock cocaine was found in the front seat of the vehicle. The buy money was recovered from the second controlled buy.

Following his arrest, Jordan gave the police a statement admitting his involvement in both transactions. The State charged Jordan with three counts. Counts I and II alleged that Jordan knowingly delivered crack cocaine in the aggregate weight of less than three grams at the Quick Mart parking lot and in the 3600 block of South Felton Street, respectively. Count III alleged that Jordan knowingly possessed crack cocaine in the aggregate weight of less than three grams in the 3600 block of South Felton Street.

At trial, Jordan admitted procuring and delivering the crack cocaine to the informant. Jordan, however, asserted the defense of entrapment by the State, claiming that he was an addict and that he had been enticed and induced to sell the cocaine by Blackburn's offer that he could pinch off a small piece of the cocaine that he was able to deliver. A jury found Jordan not guilty of Count I and guilty of both Counts II and III.

## DECISION

### I. Sufficiency

Jordan contends that the State presented insufficient evidence to rebut his entrapment defense. We disagree.

When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* We look only to the evidence of

---

1. Ind.Code § 35–48–4–1.

probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id.* If from that viewpoint there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Spangler v. State,* 607 N.E.2d 720, 724 (Ind.1993).

■■■ Ind.Code § 35–41–3–9 defines the defense of entrapment as follows:

(a) It is a defense that:

(1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and

(2) the person was not predisposed to commit the offense.

(b) conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

Once the entrapment defense is raised, the State bears the burden of showing that the defendant was predisposed to commit the crime and that the level of police activity did not persuasively affect the free will of the accused. *Dockery v. State,* 644 N.E.2d 573, 577 (Ind.1994). Factors which indicate a predisposition to sell drugs include a knowledge of drug prices, knowledge of drug sources and suppliers, uses and understanding of terminology of the drug market, solicitation of future drug sales, and multiple sales. *Id.* Predisposition may also be established by evidence that the defendant could readily access sources to buy contraband in a short period of time. *Smith v. State,* 565 N.E.2d 1059, 1063 (Ind.1991).

■ In the present case, Jordan and the informant made the first drug transaction at approximately 1:20 a.m. Shortly thereafter, the informant contacted Jordan by telephone and arranged a second controlled buy of a "fifty." (R. 258). Jordan agreed to sell the informant the drugs and stated that he needed twenty to twenty-five minutes. Jordan called the informant back and told the informant to meet him back at the Quickie Mart. The second controlled buy took place at 2:43 a.m. Jordan possessed a knowledge of drug

prices and of drug sources and suppliers. Jordan also showed an understanding of the terminology of the drug market. Further, this was Jordan's second sale of cocaine within a two hour period of time, suggesting that he could readily access sources to buy the contraband in a short period of time. This evidence is sufficient to support a finding that Jordan was predisposed to sell cocaine during the second drug transaction and to rebut Jordan's entrapment defense.

## II. *Inconsistent Verdicts*

Jordan also contends that the verdicts are fatally inconsistent and require reversal. He argues that because the only basis for the jury finding him not guilty on Count I was his entrapment defense, such entrapment continued through Count II. We disagree.

■ As Jordan concedes, each count of a multi-count indictment or information is regarded as a separate indictment or information. *Rembe v. State,* 478 N.E.2d 1255, 1256 (Ind.Ct.App.1985). For purposes of trial, each count is treated and measured separately, and a defendant may be found guilty or acquitted on one or more or all of several charges. *Id.* Although verdicts may be so extremely contradictory and irreconcilable as to require corrective action by this court, ordinarily, where a defendant is acquitted of some charges and convicted of others, the results will survive a claim of consistency where the convictions are supported by sufficient evidence. *Jackson v. State,* 540 N.E.2d 1232, 1234 (Ind.1989). Because we have already concluded that there was sufficient evidence from which the jury could reasonably conclude that the State met its burden of rebutting Jordan's entrapment defense with respect to Count II, we may sustain the jury's verdict. *See Id.* The verdicts are not so extremely contradictory and irreconcilable as to warrant corrective action by this court.

We affirm.

RUCKER and HOFFMAN, JJ., concur.