Derrick JENKINS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 89A05–0305–CR–246.

Court of Appeals of Indiana.

May 25, 2004.

Transfer Denied July 15, 2004.

Swaray E. Conteh, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Derrick Jenkins appeals his conviction for Possession of Cocaine, as a Class A felony. Jenkins presents the following three issues for review:

1. Whether the trial court properly denied his Indiana Criminal Rule 4(B) motion for discharge.
2. Whether there was sufficient evidence to support the conviction.
3. Whether Jenkins received effective assistance of counsel.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On October 16, 2001, Wayne County Drug Task Force Officers Thomas Porfidio and Michael Britt were performing surveillance at a residence on Tenth Street in Richmond. When they arrived at the residence, they saw a vehicle parked outside. The engine was running, and a female was sitting in the front passenger seat. The officers then observed a man, later identified as Jenkins, leave the house and enter the driver's seat of the vehicle. Soon thereafter, another man approached the vehicle and engaged in conversation with Jenkins. During the conversation, the man gestured toward the officers' unmarked vehicle. Jenkins then sped away. Because Jenkins' vehicle was traveling at a high rate of speed, Officers Porfidio and Britt radioed for a marked police vehicle to make a traffic stop. As they continued to follow Jenkins' vehicle, Jenkins failed to signal and turned at unsafe speeds, causing the vehicle to swerve and slide. At

times, the officers had to accelerate to fifty-five miles per hour to keep up with Jenkins. At one point, Jenkins slowed and veered toward the curb where his passenger threw three plastic bags out the front passenger window. Jenkins then drove about a block and a half further and stopped the vehicle. The officers placed Jenkins and his passenger, Tansy Carter, under arrest. The three bags, which had been discarded, were recovered and determined to contain 5.77 grams of cocaine.

On October 17, 2001, the State charged Jenkins with possession of cocaine and with being an Habitual Substance Offender.[1] At the initial hearing on October 22, 2001, the trial court appointed Mark Jones of the Wayne County Public Defender's Office, and his partner, John Dorenbusch, to represent Jenkins. Trial was set for February 25, 2002. During the pre-trial conference on January 30, 2002, defense counsel requested a continuance of the trial date. The court granted that request and reset the trial for April 29, 2002.

On April 16, 2002, defense counsel filed a motion to suppress, claiming that the evidence seized after Jenkins' arrest was the result of an illegal traffic stop. Two days later, defense counsel again requested a continuance of the trial date. That request was granted and the trial date was reset for October 14, 2002. During the evidentiary hearing on the motion to suppress held on April 29, 2002, defense counsel argued that the officers did not have reasonable suspicion or statutory authority to stop Jenkins' vehicle. He also asserted that the cocaine should have been suppressed because the decision to discard it was not truly voluntary. On June 24, the trial court denied the motion. Three days

---

1. Jenkins was also charged with Operating a Motor Vehicle While Intoxicated, as a Class A Misdemeanor, and with being an Habitual Offender. However, the State dismissed those charges prior to trial.

later, attorneys Jones and Dorenbusch filed a motion to withdraw, which the court granted on June 28, 2002. That same day the court appointed attorney Jeffrey Arnold to represent Jenkins.

On July 15, 2002, Jenkins filed a pro se motion for early trial. The trial court refused the motion for filing because Jenkins was represented by counsel. Two days later, attorney Arnold filed his written appearance. On August 2, 2002, Jenkins again filed a pro se early trial motion, which the trial court also refused. On September 6, 2002, attorney Arnold filed a motion to transcribe the suppression hearing. During a September 18, 2002 pretrial conference, attorney Arnold orally moved for a continuance of the trial. In a written motion for continuance, filed on September 23, 2002, attorney Arnold stated that he was seeking the continuance on behalf of his client to secure information which might be "vital to his defense." The motion further indicated that Jenkins had authorized attorney Arnold to request the continuance. On September 26, 2002, the trial court rescheduled Jenkins' trial for March 3, 2003.

On October 23, 2002, attorney Dale Arnett filed a written appearance on behalf of Jenkins. Thereafter, attorney Arnold made a request to withdraw, which the court granted on November 15, 2002. On February 10, 2003, attorney Arnett filed a motion to suppress. In the brief in support of the motion, attorney Arnett argued that the stop violated statutory requirements that the officers wear a uniform and badge or drive a marked police vehicle. The motion, while it sought suppression of any evidence found on Jenkins or in his vehicle and the results of chemical tests and observations of indicia of intoxication, did not seek to exclude evidence of the cocaine.

During a hearing held on February 21, 2003, the State and attorney Arnett agreed that neither party would offer evidence of Jenkins' alcohol intoxication, a Vodka bottle found in the vehicle, money found on Jenkins, or the results of Jenkins' blood test. The court issued an order to that effect, which rendered attorney Arnett's motion to suppress moot.

On February 21, 2003, attorney Arnett filed a motion for discharge pursuant to Criminal Rule 4(B) and Article I, Section 13 of the Indiana Constitution. In his memorandum in support of the motion, attorney Arnett contended that Jenkins had properly asserted his early trial right through his pro se motions of July 15, 2002, and August 2, 2002. Attorney Arnett further argued that although Jenkins was represented by counsel at the time, he was entitled to file the pro se motions because of Article I, Section 13's guarantee to be heard by himself. Following a pretrial conference held on February 26, 2003, the trial court denied that motion.

A jury found Jenkins guilty as charged, and the trial court sentenced him to thirty-seven years on the possession conviction. Jenkins pleaded guilty to the habitual substance offender allegation, and the trial court ordered him to serve three years consecutive to his sentence for possession. Jenkins now appeals.

## DISCUSSION AND DECISION

### Issue One: Speedy Trial Request

■ Jenkins contends that the trial court erred by denying his motion for discharge filed pursuant to Criminal Rule 4. When a defendant moves for a speedy trial, he invokes the procedures and deadlines of Criminal Rule 4(B)(1), which provides in relevant part:

> If any defendant held in jail on an indictment or an affidavit shall move for

an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

In *Williams v. State*, 631 N.E.2d 485, 486 (Ind.1994), our supreme court stated that "[t]he purpose served by Crim. R. 4(B) is to prevent a defendant from being detained in jail for more than 70 days after requesting an early trial." Here, there is no question that Jenkins was detained in jail for more than 70 days after either early trial request was made. Jenkins filed his motions on July 15, 2002, and August 2, 2002, and his trial occurred on March 3, 2003. However, the question remains whether Jenkins' pro se early trial motions triggered the time limits of Criminal Rule 4(B). We review this matter de novo. *Kirby v. State*, 774 N.E.2d 523, 530 (Ind.Ct.App.2002), *trans. denied*.

The transcript reveals that Jenkins attempted to file his first request for an early trial a couple of weeks after his first court-appointed attorneys were allowed to withdraw and two days before attorney Arnold, his second court-appointed attorney, filed his appearance with the court. The transcript further reveals that Jenkins attempted to file his second early trial request on August 2, 2002. Jenkins appears to contend that because he did not have either an attorney of record when his first motion was filed or actual notice of his second attorney's appointment when he filed the second motion, he had essentially asserted his constitutional right to repre-

sent himself by filing the pro se motions. In the alternative, Jenkins claims that he was asserting his desire to proceed with hybrid representation and invoking his state constitutional right "to be heard by himself" under Article I, Section 13.

██ Initially, we note that while attorney Arnold had not yet filed his written appearance with the court, he had been appointed as attorney for Jenkins by the court's order of June 28, 2002.[2] Our supreme court has stated that "once counsel [is] appointed, [a d]efendant sp[eaks] to the court through counsel." *Underwood v. State*, 722 N.E.2d 828, 832 (Ind.2000). As counsel had been appointed before Jenkins filed either of his early trial motions, the court was not required to accept the motions for filing. *See id.*

██ We further conclude that Jenkins did not clearly and unequivocally assert his right to self-representation when he filed those motions. "As a prerequisite to the assertion of the right of self-representation, there must be a clear and unequivocal request to proceed pro se." *Dowell v. State*, 557 N.E.2d 1063, 1065 (Ind.Ct.App. 1990), *trans. denied, cert. denied*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). A clear and unequivocal request is made when a defendant objects to a court's order appointing counsel and does not acquiesce in the court-appointed counsel's presentation of the defense. *Sherwood v. State*, 717 N.E.2d 131, 135–36 (Ind.1999). Here, Jenkins never expressly asserted his right to proceed pro se and seemingly accepted the appointment of his second attorney, who indicated in the motion for continuance that Jenkins had given his authorization for that filing. Thus, Jenkins did not clearly and unequivocally as-

2. It further appears that the trial court mailed a copy of its order that same day both to attorney Arnold and Jenkins.

sert his right to self-representation. *See Dobbins v. State,* 721 N.E.2d 867, 872–73 (Ind.1999) (concluding defendant did not clearly and unequivocally assert right to self-representation by filing pro se motions, where defendant never specifically requested to proceed pro se and consistently accepted court-appointed counsel's assistance).

For the same reasons, we find that Jenkins did not assert his desire to proceed with hybrid representation. Jenkins does not claim that he explicitly made known his desire to represent himself in addition to having court-appointed counsel. Thus, filing the pro se motions did not amount to a request to proceed with hybrid representation. *See Kelley v. State,* 470 N.E.2d 1322, 1326 (Ind.1984) (finding defendant's pro se motions, which did not expressly state relief sought, could not be considered request to proceed with hybrid representation).

■ Finally, Jenkins' contention that he was entitled to file the pro se early trial motions pursuant to Article I, Section 13 is without merit. Article I, Section 13 provides that "[i]n all criminal prosecutions, the accused shall have the right to ... be heard by himself and counsel." But Jenkins cites no authority to support his contention that Article I, Section 13 guarantees a defendant the right to file pro se motions when represented by counsel, without expressly seeking to proceed with hybrid representation. Indeed, our supreme court has stated that the provision "protects against limitations on a defendant's right ... to be represented by *either* himself or counsel." *Sanchez v. State,* 749 N.E.2d 509, 521 (Ind.2001) (emphasis added). In light of this statement by our supreme court, we interpret this provision to mean that a defendant must make a clear and unequivocal request to proceed pro se, or request the assistance of coun-

sel, who will speak on behalf of the defendant. As we have already concluded that Jenkins did not adequately assert his right to self-representation or desire to proceed with hybrid representation, he was entitled only to be heard through his attorney, who elected to file a continuance rather than request an early trial. *See Driver v. State,* 725 N.E.2d 465, 471 (Ind.Ct.App.2000) ("When a defendant files a pro se motion, the trial court is justified in striking it in favor of counsel's chosen course of action."). Therefore, because Jenkins did not properly request an early trial under Criminal Rule 4(B), the trial court did not err in denying his motion for discharge.

## Issue Two: Sufficiency of the Evidence

Jenkins also challenges the sufficiency of the evidence supporting his possession of cocaine conviction. In reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of witnesses. *Cleasant v. State,* 779 N.E.2d 1260, 1262 (Ind.Ct.App.2002). Instead, we look to the evidence and reasonable inferences that support the verdict and affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found that the defendant was guilty beyond a reasonable doubt. *Id.*

■ To support the conviction for possession of cocaine, as a Class A felony, the State was required to prove that Jenkins knowingly or intentionally possessed cocaine, weighing at least three grams, within 1,000 feet of school property. *See* Ind. Code § 35–48–4–6(a); (b)(3)(B)(i). According to Jenkins, the State failed to show that he constructively possessed the cocaine within 1,000 feet of school property.

■ To establish constructive possession, the State must show that the defendant has both the intent and capability

to maintain dominion and control over the cocaine. *Goliday v. State,* 708 N.E.2d 4, 6 (Ind.1999). Capability to maintain dominion and control is established by evidence that the defendant is able to reduce the controlled substance to his personal possession. *Id.* To establish the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband. *Id.* When possession is exclusive, knowledge may be inferred; however, if the possession is non-exclusive, evidence of additional circumstances pointing to the defendant's knowledge of the presence of the contraband and the ability to control it is required. *Holmes v. State,* 785 N.E.2d 658, 661 (Ind.Ct.App.2003). "Among the recognized 'additional circumstances' are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant." *Id.*

Unlike many constructive possession cases, in this case the officers did not find the cocaine while it was inside Jenkins' vehicle. Rather, the passenger who was riding in the front seat threw the three bags of cocaine out the car window. The State contends that that evidence, in addition to Jenkins' attempt to elude the undercover officers by his erratic driving, is sufficient to show that Jenkins knew of the presence of the cocaine and was exerting control over it. We agree.

Again, the evidence shows that immediately after the man who approached Jenkins' vehicle gestured toward the officers in the unmarked vehicle, Jenkins drove away at a high rate of speed. Jenkins then continued driving at a high rate of speed through a residential area, making several abrupt turns, instead of taking a direct path to his destination. At the moment when the passenger tossed the cocaine out the window, Jenkins slowed the vehicle a little and "glided" slightly toward the curb. Soon after the cocaine was discarded, Jenkins stopped the vehicle.

Based on that evidence, the jury could have reasonably inferred that Jenkins had been made aware of the officers' presence in the unmarked vehicle and was attempting to evade them, even though they were not officially attempting a stop. The jury also could have inferred that Jenkins was acting in concert with the passenger by slowing the vehicle a little and gliding slightly toward the curb when the cocaine was tossed from the vehicle. Further, it is reasonable to conclude that Jenkins stopped the vehicle soon after the cocaine was tossed from the vehicle, because the driver knew that the police would no longer be able to locate the cocaine inside the vehicle. Finally, the jury could have reasonably inferred that Jenkins was in close proximity to the cocaine, which was within an arm's reach, and was aware of the contents of the bags because of the clear packaging.

Mere presence at the scene where drugs are found or association with someone who possesses drugs, without more, will not support a finding of constructive possession. *See Matter of J.L.,* 599 N.E.2d 208, 212 (Ind.Ct.App.1992), *trans. denied.* However, the additional circumstances described above show that Jenkins was not merely present in the vehicle or simply associating with his passenger. The jury could have reasonably concluded from Jenkins' course of conduct that he knew of the presence of cocaine and that, in fact, he exercised control over it. Thus, the State provided sufficient evidence that Jenkins was in constructive possession of the cocaine.

Jenkins' contention regarding the State's failure to prove that he possessed the cocaine within 1,000 feet of school property also fails. Jenkins points to several places in the record, which, according to him, show that the State did not conclusively establish where the cocaine was found. In particular, Jenkins directs us to State's Exhibit 6, the envelope containing one of the bags of cocaine and its evidence tag, which indicates that the place of recovery was the "400 Block [of] S. 15th St." While our review of the transcript reveals that State's Exhibit 6 does, in fact, state that Fifteenth Street was the place where the officers recovered the cocaine, the transcript also reveals that this entry was made in error and that, in fact, the officers recovered the cocaine on South D street, between Fourteenth and Fifteenth Streets, within 1,000 feet of school property.

During the trial, Officer Porfidio testified that he had recorded on the evidence tag information such as the date, time and location of the recovery of the cocaine. As he was verbally relaying this information to the jury, he became aware that he had mistakenly recorded that the cocaine had been recovered at the "400 block [of] South 15th Street." He immediately corrected his error and informed the jury that the "400 block [of] South 15th Street" was "where the vehicle was stopped." That testimony was consistent with his earlier testimony that the vehicle had come to a stop on Fifteenth Street and that in order to recover the bags of cocaine, he had to walk the "length of one city block and then around the corner ... fifty feet." It was also consistent with his earlier testimony that the cocaine had been discarded by the female passenger on D Street. Thus, Officer Porfidio's testimony, when read as a whole, reveals that the cocaine was found on D Street, and not Fifteenth Street where the car eventually stopped. The transcript further reveals that the distance from where the cocaine was found on D Street to the "southeast corner of the Vaile School property" was 156.5 feet. As there was also evidence that 1,000 feet east of the Vaile School property fell "between South Fifteenth and South Seventeenth Streets," there is no serious dispute that Jenkins possessed the cocaine within 1,000 feet of school property. Thus, the evidence is sufficient to support Jenkins' conviction for possession of cocaine as a Class A felony.

### Issue Three: Effective Assistance of Counsel

Jenkins contends that he was denied the effective assistance of counsel. To establish a violation of the right to the effective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Wales v. State*, 768 N.E.2d 513, 523 (Ind.Ct.App. 2002), *clarified on rehearing on other grounds*, 774 N.E.2d 116, *trans. denied*. Deficient performance is established by showing that counsel's representation fell below an objective standard of reasonableness. *Id.* "Counsel is presumed competent and the defendant must present strong and convincing evidence to rebut this presumption." *Winters v. State*, 698 N.E.2d 1197, 1198 (Ind.Ct.App.1998), *trans. denied*. Isolated errors, poor strategy, or bad tactics do not necessarily amount to deficient performance. *Id.* Prejudice is shown by establishing that there is a reasonable probability that, but for counsel's errors, the outcome would have been different. *Wales*, 768 N.E.2d at 523. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

To support his contention, Jenkins points to several instances of alleged defi-

cient performance.[3] First, Jenkins contends that attorney Arnold failed to pursue Jenkins' speedy trial request. Jenkins also cites several instances of alleged deficient performance by attorney Arnett. They include the following: (1) withdrawing the motion to suppress and failing to object to evidence that was seized following an illegal stop; (2) failing to object to the prosecutor's questioning of State witnesses; (3) failing to object to several of the State's exhibits; (4) failing to object to the prosecutor's closing argument; and (5) electing not to move for judgment on the evidence following the State's case-in-chief.

### A. Attorney Arnold

■ Jenkins contends that attorney Arnold failed to pursue his speedy trial request under Criminal Rule 4 and requested a continuance of the trial against his wishes. According to Jenkins, attorney Arnold's decision not to pursue a speedy trial "was not a tactic, but a gross failure to protect Jenkins' constitutional rights."

As indicated above, attorney Arnold was appointed on June 28, 2002, and filed his appearance on July 17, 2002. At the time of his appointment, trial was scheduled for October 14, 2002. In the motion for continuance, attorney Arnold stated that he was requesting the continuance in order to obtain a copy of the suppression hearing, which had not yet been transcribed. Counsel further stated that he believed the information might be vital to Jenkins' defense. Given that attorney Arnold had recently been appointed and was not the attorney of record during the suppression hearing, we cannot say that his decision to obtain a transcription of the suppression hearing, rather than to file a speedy trial request, amounted to deficient performance. While Jenkins may have insisted that attorney Arnold file a speedy trial request, attorney Arnold was not deficient for electing to seek a continuance for the purpose of trial preparation. *See Dobbins*, 721 N.E.2d at 873 (concluding that defense counsel did not render deficient performance by seeking a continuance against the defendant's wishes when decision was made for trial preparation).

### B. Attorney Arnett

#### 1. Motion to Suppress

■ Jenkins contends that attorney Arnett was deficient when he withdrew his motion to suppress after the court entered an order in limine prohibiting both the defense and the State from referring to "signs of alcohol intoxication, the bottle of Absolute[ ] Vodka, the one hundred forty dollars found on the person of the Defendant [ ], anything else found on the person of the Defendant, Derrick Jenkins, at the time of his apprehension" and a blood test performed on Jenkins. Jenkins contends that attorney Arnett should have pursued the motion to suppress because the order in limine was not a determination on the ultimate admissibility of the evidence. Jenkins further contends that when evidence of the "material that [attorney Arnett] believed was found as a result of the illegal seizure" was admitted at trial, attorney Arnett failed to object.

Initially, we note that other than broadly asserting that improper evidence was admitted at trial, Jenkins does not identify what particular evidence was admitted or

---

**3.** We note that in presenting several of his contentions, Jenkins has failed to comply with Appellate Rule 46(A)(8)(a) which provides that "[e]ach contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on...." To the extent that this court was able to address the issues, despite the noncompliance, we did so. However, when the failure to follow the rule resulted in our inability to review the issue, the noncompliance resulted in waiver of the issue on appeal.

cite to places in the transcript where the evidence was erroneously admitted. Therefore, we are unable to examine at what point during the trial attorney Arnett allegedly performed deficiently. Appellate Rule 46(A)(8)(a) provides that "[e]ach contention must be supported by citations to . . . the Appendix or parts of the Record on Appeal relied on. . . ." Because Jenkins has failed to comply with this rule, he has waived this argument on appeal. *See Diaz v. State,* 753 N.E.2d 724, 728 (Ind.Ct.App. 2001), *trans. denied.*

■■■ Even were we to address the issue, we are unable to locate any place in the transcript where the evidence, referred to in the court's order, was admitted. Given that none of the evidence sought to be suppressed was admitted at trial, Jenkins has failed to show that his counsel's performance was deficient or that the outcome of the trial would have been different had counsel secured an order suppressing the evidence. *See Allen v. State,* 686 N.E.2d 760, 778–79 (Ind.1997) (finding counsel's failure to file motion to suppress did not prejudice defendant as there was no reasonable probability that result would have been different), *cert. denied,* 525 U.S. 1073, 119 S.Ct. 807, 142 L.Ed.2d 667 (1999).

### 2. Questioning of State's Witnesses

■■■ Next, Jenkins contends that attorney Arnett failed to object to the prosecutor's questioning of two of its witnesses, Officers Britt and Porfidio. Specifically, Jenkins contends that the prosecutor "virtually testified for the witnesses[,] . . . characterized the witnesses' testimony with facts not in evidence" and "on many occasions solicited narrative evidence."

■■■ Although Jenkins cites to portions of the transcript where Officers Britt and Porfidio testified, he does not indicate what objections should have been made with regard to specific portions of the tes-

timony. In addition, Jenkins has failed to cite any authority in support of his contention. It is not this court's duty to develop a party's contentions. *See McPherson v. State,* 178 Ind.App. 539, 383 N.E.2d 403, 406 (1978) ("We will not search the record to discover errors not properly presented or speculate as to what comment the Defendant is referring or why he considers it harmful."). Therefore, the issue is waived. *Id.*

### 3. Admission of State's Exhibits

Jenkins also claims that attorney Arnett failed to object to the admission of State's Exhibit 4, a photograph depicting where the bags of cocaine were located when the officers found them. In particular, Jenkins contends that the State did not lay a proper foundation because the prosecutor did not offer evidence of the date the photograph was taken or indicate who took the photograph. Jenkins further claims that State's Exhibits 1 and 3, which depict the three bags of cocaine on the ground, were also admitted without proper foundation. Finally, Jenkins contends that attorney Arnett should have objected to the admission of State's Exhibits 6, 7 and 8, evidence envelopes containing the three bags of cocaine.

■■■ But again, Jenkins fails to cite authority in support of his contentions. To establish a proper foundation for the admission of a photograph, "a witness must establish that the photograph is a true and accurate representation of what it is meant to portray." *Martin v. State,* 784 N.E.2d 997, 1007 (Ind.Ct.App.2003). With regard to State's Exhibits 1, 3 and 4, Officer Porfidio described what each photograph depicted and further stated that each fairly and accurately showed the area of the city of Richmond as it appeared on October 16, 2001, when the alleged offense occurred. That testimony sufficiently au-

thenticated the photographs and any objection would have been overruled. Thus, attorney Arnett did not render deficient performance by failing to make an objection which would not have been sustained. *See Lambert v. State,* 743 N.E.2d 719, 738 (Ind.2001) (concluding defense counsel was not deficient for failing to make objection which would not have been sustained), *cert. denied,* 534 U.S. 1136, 122 S.Ct. 1082, 151 L.Ed.2d 982 (2002).

▮ With regard to State's Exhibits 6, 7 and 8, Jenkins fails to indicate what objection or objections should have been made. Jenkins contends only that the exhibits were admitted without objection and included information concerning the cocaine's location that contradicted earlier testimony. However, we fail to see why the discrepancy would have precluded admission of the exhibits. At most, the inconsistency goes to the weight and not the admissibility of the exhibits. *See Craig v. State,* 515 N.E.2d 862, 864 (Ind.1987) (stating discrepancies in evidence go to weight and not admissibility).

▮ Moreover, to the extent Jenkins claims that attorney Arnett should have cross-examined Officer Porfidio concerning the information on the exhibits, we conclude counsel was not deficient in his performance. As we explained earlier, during his testimony on direct examination, Officer Porfidio indicated to the jury that he had erroneously recorded that the cocaine was recovered on Fifteenth Street. He then made clear that Fifteenth Street was the place of Jenkins' arrest. Earlier in his testimony, Officer Porfidio testified that the cocaine had been discarded on South D Street, between Fourteenth and Fifteenth Streets. To cross-examine Officer Porfidio on this point would have emphasized to the jury that the cocaine, indeed, had been recovered from a point on D Street proven to be well within 1,000 feet of school property. Thus, it was a matter of trial strategy not to emphasize this evidence. *See Lambert,* 743 N.E.2d at 737–38 (concluding defense counsel's decision not to object to prosecutor's comments was legitimate strategy to avoid placing undue emphasis upon statement).

### 4. Prosecutor's Closing Arguments

▮ Jenkins claims that attorney Arnett failed to object to the prosecutor's comment that both Jenkins and his passenger, Tansy Carter, were guilty of possession of cocaine. During closing argument, the prosecutor made the following remarks:

> And again, Ladies and Gentlemen, it boils down to who was controlling the car. Who was calling the shots? It was [Jenkins]. He was playing a part in it, that can't be ignored. He was helping to maintain dominion and control over those three bags of cocaine, Derrick Jenkins was. *It doesn't take a rocket scientist to figure it out, Ladies and Gentleman. They're both guilty. Derrick Jenkins is guilty. Tansy Carter is guilty.*

(Emphasis added). According to Jenkins, the comment prejudiced the jury because it allowed them to believe that Jenkins' passenger, Tansy Carter, had already been convicted of the same offense for which Jenkins was being tried.

Although Jenkins, again, fails to cite authority in support of his contention, we understand his claim to mean that the prosecutor was attempting to use Carter's conviction to establish Jenkins' guilt. Our supreme court has stated that such use is impermissible. *See Borders v. State,* 688 N.E.2d 874, 880 (Ind.1997). For instance, in *Borders,* the court determined that the prosecutor improperly argued to the jury that " 'if [codefendant] is guilty of felony murder so is' defendant," after the jury had been made aware of the codefendant's guilty plea earlier in the trial. *Id.*

Here, unlike in *Borders,* no evidence was presented to the jury that Carter had pleaded guilty to or had been convicted of possession of cocaine. The jury was informed only that Carter had been a passenger in Jenkins' vehicle, had discarded the cocaine and had been arrested. At no time during closing argument did the prosecutor state that Carter had already been found guilty of the offense with which Jenkins was charged. Rather, it appears that by arguing that both Jenkins and Carter were guilty, the prosecutor was merely attempting to show that while Carter was in physical possession of the cocaine, Jenkins was in constructive possession, a point on which the jury had been instructed. Therefore, we disagree with Jenkins' assertion that the prosecutor improperly implied that Carter had already been convicted. Here, there was no improper use as in *Borders,* and attorney Arnett was not deficient for failing to object to the prosecutor's comments. *See Potter v. State,* 684 N.E.2d 1127, 1134 (Ind.1997) (holding defendant did not establish he was denied effective assistance of counsel when defendant failed to prove that defense counsel's objections to State's closing argument would have been sustained).

■■■■ Even if the comment were improper, we cannot say that counsel's failure to object undermined confidence in the outcome of the trial. A prosecutor's improper reference to a codefendant's conviction will not be considered prejudicial if the prosecutor's comment is an isolated remark. *Seaton v. State,* 478 N.E.2d 51, 57 (Ind.1985). Considering that the prosecutor did not expressly state that Carter had been convicted and did not belabor the point about Carter's guilt, we cannot conclude that Jenkins was prejudiced.

### 5. Judgment on the Evidence

■■■ Finally, Jenkins contends that attorney Arnett failed to move for judgment on the evidence at the conclusion of the State's case-in-chief. In particular, Jenkins claims that the motion would have been granted because there was a total absence of evidence on the element of constructive possession.

Trial Rule 50 provides that a party may move for judgment on the evidence where all or some of the issues in a case tried before a jury are not supported by sufficient evidence. Because we have already concluded that there was sufficient evidence of constructive possession to sustain Jenkins' conviction, any motion would have been denied. Therefore, attorney Arnett was not deficient in his performance. *See McKnight v. State,* 612 N.E.2d 586, 588 (Ind.Ct.App.1993) (finding defense counsel's performance was not deficient in decision not to file motion which would have been denied), *trans. denied.* Jenkins has not demonstrated that his trial counsel was ineffective.

Affirmed.

KIRSCH, C.J., and RILEY, J., concur.